UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

OCTAVIUS JORDAN,

                 Plaintiff,

v.                                               Case No. 19-cv-1314-pp

WARDEN SCOTT ECKSTEIN, STEVE SCHUELER,
JOHN KIND, JON LITSCHER, CATHY JESS,
STEPHANIE CUMMINGS, DR. HARRIS-FORLLES,
A. DEGROOT, MRS. CLEARY, MARK EITING,
R RITCHIE, SHARON PIERCE, LT. WICKMAN,
E. DAVIDSON, C. O'DONNELL, JAMES GREER,
SGT. ROSE, JOHN OR JANE DOES, Psychiatrists,
JOHN OR JANE DOE, BHS Psychology Director
and CAPT. BAUMANN,

                 Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Octavius Jordan, who is confined at Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with

his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 20, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $6.25. Dkt. No. 5. The court received that fee on October 15, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

At the time of the events described in the complaint, the plaintiff was incarcerated at the Green Bay Correctional Institution (Green Bay). Dkt. No. 1. He is suing Scott Eckstein, warden; Steve Schueler, deputy warden; John Kind, security director; Jon Litscher, secretary of the Wisconsin Department of Corrections (DOC); Cathy Jess, DOC deputy secretary; Stephanie Cummings, dorm unit supervisor; Dr. Harris-Forlles, psychologist; A. DeGroot, institution

3

complaint examiner; Mrs. Cleary, social worker; Mark Eiting, financial program supervisor; R. Ritchie, store/canteen supervisor; Sharon Pierce, store/canteen supervisor; Lt. Wickmann; E. Davidson, corrections complaint examiner; C. O'Donnell; James Greer, director of the Bureau of Health Services; Sgt. Rose; Captain Baumann; John or Jane Does, psychiatrists; John or Jane Doe, Bureau of Health Services psychology director; and Capt. Baumann. Id. at 2-4.

The plaintiff alleges that on October 15, 2017, he was transferred from his prison job at the canteen/store to a job with Badger State Industries.[1] Id. at 5. Based on DOC and Green Bay policy, he had to move from his single cell in the North Cell Hall to the dorm, which is an open, independent living environment that holds 117 inmates. Id. The plaintiff says that two months after he started his new job and moved to the dorm, his mental health condition began to deteriorate. Id. The plaintiff, who states that he suffers from schizophrenia, depression and post traumatic stress disorder, became paranoid, depressed and suicidal, thinking that inmates around him were out to get him and to do him harm. Id. at 5-6. He alleges that exposure to so many people in the dorm gave him anxiety attacks and increased his racing thoughts, and he started requesting to be moved back to the North Cell Hall or the medical unit. Id. at 6.

The plaintiff alleges that on December 24, 2017, he wrote a psychological services request to his psychologist, defendant Dr. Harris-Forlles, asking to be

---

[1] Badger State Industries, Wisconsin's prison industry program, operates thirteen industries within eleven correctional facilities. See https://buybsi.com/aboutbsi.html (last visited October 17, 2020).

4

seen. Id. He states that while he waited to see the psychological services unit, he was seen by two different psychiatrists. Id. The plaintiff also allegedly wrote to defendants Stephanie Cummings, John Kind, Steve Schueler and Scott Eckstein,[2] informing them that living in the dorm was causing his mental health to deteriorate. Id. He allegedly asked to be moved because of his conditions. Id.

The plaintiff states that two other inmates lived in the North Cell Hall and medical unit while continuing to work at Badger State Industries, but that his request was denied. Id. at 6-7. The plaintiff states that he had legitimate mental health issues to justify why he couldn't cope while living in the dorm, and his mental illnesses were not taken as seriously as the conditions of the other two inmates. Id. at 7. The plaintiff alleges that he filed two inmate complaints, 2018-3412 and 2018-7509. Id. Defendants DeGroot, Scott Eckstein, E. Davidson, C. O'Donnell, Jon Litscher, Cathy Jess, James Greer and the psychology director (presumably John or Jane Doe BHS Psychology Director) allegedly refused to provide the plaintiff with mental health services by moving him out of the dorm.[3] Id. The plaintiff states that the defendants placed and left him in conditions of confinement that exacerbated his mental health conditions. Id. He says that after he notified the defendants that his

---

[2] He states that he also wrote to non-defendants Jamie Wertal, Dr. Todd Hamilton and Catherine Francois. Id.

[3] The plaintiff states that non-defendant M. Larson (corrections complaint examiner) also refused to move him out of the dorm. Id.

5

mental health was deteriorating they left him in those conditions for over 120 days. Id.

The plaintiff alleges that on May 28, 2018, he attempted suicide by wrapping a bed sheet around his neck and attaching it to a steel beam in attempt to hang himself. Id. Several inmates allegedly ran over and prevented the plaintiff from walking off the desk on which he stood. Id.

The plaintiff alleges that he was placed in mental health observation, which he says should have been "nonpunitive," according to Wis. Admin. Code §DOC 311.01. Id. The plaintiff states that on May 31, 2018, he was released from observation and placed in temporary lock-up (TLU). Id. That morning, defendant Lt. Wickman allegedly told the plaintiff that the plaintiff could return to "general population" but that defendant Warden Eckstein said he would have to live in the dorm. Id. The plaintiff says that he tried to explain to Wickman that living in the dorm had caused him to attempt suicide and that he would do it again if he returned there. Id. at 8. Wickman allegedly told the plaintiff that he would write him a conduct report for playing the system, which the plaintiff says is an example of Green Bay staff not taking his claims seriously. Id.

The plaintiff alleges that on June 7, 2018, while still in TLU, he received a DOC-67 form, Notice of Inmate Placed in Temporary Lock-up, informing him that he was being held in TLU for allegedly being involved in a physical altercation with another inmate. Id. The plaintiff states that this was a false charge and in violation of Wis. Admin. Code §311.01 which provides that

6

inmates should not be punished for having a mental health breakdown. Id. The plaintiff alleges that three days later he filed an inmate complaint (2018-12752) based on being held in TLU on false charges. Id. He states that two days after that, June 12, 2018, he was moved from TLU to a single cell in the North Cell Hall. On June 15, 2018, the plaintiff allegedly received a reply to his inmate complaint stating that it had been dismissed and explaining that he "was placed into TLU because [he] refused to move back to the dorm and that Lt. Krivoshen made a mistake when filling out the DOC-67 forms and [defendant] Security Director John Kind corrected his mistake by releasing [the plaintiff] from TLU." Id. The plaintiff alleges that there was no mistake but, rather, that "being left in TLU for twelve days was the beginning of the defendants' punishment, retaliation, and discrimination against [him] for having a mental health breakdown and conditions." Id. He asserts that the defendants' disregard for his health, safety and well-being was their primary purpose throughout all their actions. Id.

The plaintiff alleges that on June 14, 2018, a fellow inmate and co-worker told him that defendant Mrs. Ritchie told him (the fellow inmate) to tell the plaintiff that her boss, defendant Mark Eiting, told her to fire the plaintiff "because he did not want any 'Crazies' working up there at the store/canteen." Id. at 8-9. The plaintiff states that on that same day he received a "bogus," undated and unsigned DOC 1408 form removing him from his job and placing him on "involuntary unassignment." Id. at 9. On June 24, 2018, the plaintiff wrote a letter to defendants Ritchie, Baumann and Eiting telling them that he

7

was being wrongfully removed from his job as a warehouse worker 4.[4] Id. The next day, the plaintiff allegedly received a notice from Baumann that removed him from his job and placed him in "voluntary unassignment." Id. The plaintiff alleges that on June 27, 2018, he filed an inmate complaint (2018-13991) raising the one issue of his placement into voluntary unassignment status. Id. His inmate complaint and appeal were dismissed, stating that he was never placed into *voluntary* unassignment but, rather was placed into *involuntary* unassignment. Id. at 9-10. The plaintiff says that the appeal dismissal also stated that there was a mistake made on the notice he received from Baumann. Id. at 10.

The plaintiff alleges that on July 2, 2018, he filed an inmate complaint (2018-14353) on the one issue of being punished, retaliated and discriminated against for having a mental health breakdown "and conditions by being removed from [his] job." Id. On July 18, 2018, defendant DeGroot allegedly rejected the inmate complaint stating that the plaintiff had already raised the issue in 2018-3991, but the plaintiff says that he did not raise that issue in the prior inmate complaint. Id. The plaintiff stated that DeGroot violated Green Bay policy by addressing issues on complaints where the issue was not raised. Id. He says that in rejecting the plaintiff's complaint on being punished, retaliated and discriminated against for having a mental health breakdown and

---

[4] The plaintiff says that he also wrote to non-defendants DeBruin and Francois. Id.

conditions, DeGroot established Green Bay's policy of covering up the defendants' constitutional violations. Id.

The plaintiff alleges that on July 9, 2018, he wrote a letter of appeal to defendant John Kind asking him to reinstate the plaintiff to his job. Id. The plaintiff alleges that on August 1, 2018, he filed an inmate complaint (2018-16505) in which he tried to challenge the unconstitutional DOC and Green Bay policy that allows the security director and Capt. Baumann to remove him and other inmates from previous jobs and to deny them for future jobs, by only citing "security concerns," without being more specific. Id. The complaint was allegedly rejected on the ground that the plaintiff was, in essence, challenging the fact that he was removed from his job, which he had already done. Id. The plaintiff states that complaint 2018-16505 was not about being removed from his job but, rather, was about the policy used to remove him from his job. Id.

The plaintiff alleges that on August 9, 2018, he received a correct DOC-1408 form removing him from his job as warehouse worker 4 and placing him into involuntary unassignment status. Id. at 11. The plaintiff says he has not worked since his release from observation on June 12, 2018. Id. He states that some staff members have told him that he was placed on Green Bay's "Black List" for trying to get a job. Id. The plaintiff alleges that he recently tried to train for a job in the bathhouse. Sgt. Preberg allegedly tried to hire the plaintiff, but Baumann denied him the job citing only "security concerns." Id. About a week later, the plaintiff allegedly submitted a request for a janitor job that had opened up. Id. The plaintiff says that another inmate told him that Officer

9

Flannery told the inmate to tell the plaintiff, "He does not know who I pissed off but as long as I'm an inmate here in Green Bay I will never get another job." Id.

The plaintiff alleges that, due to the actions and inactions of the defendants, he has suffered stomach problems as well as mental and psychological damage. Id. at 12. He says that he told medical staff about his stomach problems and his recent bouts with depression, suicidal thoughts and plans to harm others. Id.

The plaintiff claims that the defendants violated his constitutional rights under the Eighth and Fourteenth Amendments, subjecting him to unconstitutional conditions of confinement and showing deliberate indifference to a serious mental health need. Id. at 11. The plaintiff also claims that the defendants violated his rights under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Id. He claims that the defendants violated his right of access to the courts with their inmate complaint policy/procedure. Id. The plaintiff also challenges the other unconstitutional policies mentioned in the complaint. Id.

For relief, the plaintiff seeks millions of dollars in compensatory and punitive damages. Id. at 13. He also requests a court order stopping defendants Kind and Baumann from being able to use the term "security reasons/concerns" without being more specific. Id.

    C.    Analysis

To state a claim for deliberate indifference to a serious medical need, an inmate must allege that he (1) suffered from an objectively serious medical

10

condition and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. Wilson v. Adams, 901 F.3d 816, 820 (7th Cir. 2018). "[T]he need for a mental illness to be treated could certainly be considered a serious medical need." Id. (quoting Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001); see also Wellman v. Faulkner, 715 F.2d 269 (7th Cir. 1983)). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." Id. (quoting Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted)). The Eighth Amendment requires only "reasonable measures to meet a substantial risk of serious harm;" it does not give prisoners entitlement to "demand specific care" or "the best care possible." Id. (quoting Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997)). A defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. Id. (citing Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)).

The plaintiff alleges that he suffers from schizophrenia, depression and posttraumatic stress disorder and that about two months after he moved to the dorm, he became paranoid, depressed and had suicidal thoughts. He allegedly submitted a request to defendant Dr. Harris-Forlles asking to be seen, and he informed defendants Cummings, Kind, Schueler and Eckstein that living in the dorm was causing his mental health to deteriorated and he asked to be moved. The plaintiff also filed two inmate complaints, and defendants DeGroot,

11

Eckstein, Davidson, O'Donnell, Litscher, Jess, Greer and the psychology director (presumably John or Jane Doe BHS Psychology Director) allegedly refused to provide the plaintiff with mental health services by moving him out of the dorm. The plaintiff alleges that after he notified the defendants that his mental health was deteriorating, they left him in the dorm for over 120 days and that as a result, on May 28, 2018, he attempted suicide. Construed liberally, these allegations state a claim for deliberate indifference to a mental health need.

The plaintiff references a constitutional conditions of confinement claim, presumably based on the conditions in the dorm. The Eighth Amendment can be violated by conditions of confinement in a prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Id. The plaintiff alleges that exposure to so many other inmates in the dorm—an open, independent living environment—caused him anxiety attacks and increased his racing thoughts. But the plaintiff does not allege that conditions in the dorm deprived him of a basic human need, such as heat, clothing or sanitation. See id. (citing Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006)). The plaintiff has not stated a claim of unconstitutional conditions of confinement.

12

Next, the plaintiff claims that the defendants violated his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §12132 and the Rehabilitation Act, 29 U.S.C. §794, because they did not "accommodate" his mental condition by letting him move from the dorm while still working at Badger State Industries. The Court of Appeals for the Seventh Circuit has held that the ADA does not apply to the employment of prisoners. Starry v. Oshkosh Corr. Inst., 731 F. App'x 517 (7th Cir. 2018). Workplace discrimination based on a disability in connection with paid prison employment is not covered under Title II. Neisler v. Tuckwell, 807 F.3d 225, 227-28 (7th Cir. 2015) (citations omitted). In Murdock v. Washington, 193 F.3d 510, 512 (7th Cir. 1999), the court of appeals found that Title I of the ADA did not apply because the plaintiff was "an inmate of the prison, not an employee or job applicant." Additionally, the Eleventh Amendment shields the prison from suits seeking damages under Title I. Starry, 731 F. App'x at 519; Neisler, 807 F.3d at 228. Nor does the plaintiff have a viable claim under the Rehabilitation Act. Starry, 731 Fed. App'x at 519. As with Title II of the ADA, the RA prohibits a disabled person from being excluded from participating in, being denied the benefits of or being subjected to discrimination in any program or activity that receives federal funds. 29 U.S.C. §794(a). The Seventh Circuit has held that paid prison employment does not constitute an activity, service, or program. Neisler, 807 F.3d at 227-28. The court will not allow the plaintiff to proceed on a claim under the ADA or the RA.

The plaintiff asserts that his right of access to the courts was violated based on the defendants' treatment of his inmate complaints. To state a denial of access to the courts claim, the plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted). This requires the plaintiff to identify the underlying legal claim that he asserts the denial of access caused him to lose. See Christopher v. Harbury, 536 U.S. 403, 416 (2002); Steidl v. Fermon, 44 F.3d 623, 633 (7th Cir. 2007). The plaintiff does not allege that the defendants' treatment of his inmate complaints had any impact on his ability to pursue a legal case, so he has not stated an access-to-the-courts claim.

Additionally, the plaintiff alleges that the defendants punished, retaliated and discriminated against him for having a mental breakdown. The plaintiff says that after his May 28, 2018 suicide attempt, he was placed on observation for three days, and then placed in TLU. The plaintiff did not want to return to the dorm and he alleges that defendant Wickman told the plaintiff that Wickman would write the plaintiff a conduct report for "playing the system." Dkt. No. 1 at 8. The plaintiff states that he was punitively kept in TLU for twelve days during which time he was given a Notice of Inmate Placed in Temporary Lock-up, informing him that he was being placed in TLU for being involved in a physical altercation with another inmate, which he says was a false charge. On June 12, 2018, the plaintiff was moved back to a single cell in

14

the North Cell Hall and he found out three days later that he "was placed into TLU because [he] refused to move back to the dorm and that Lt. Krivoshen made a mistake when filling out the DOC-67 forms and [defendant] Security Director John Kind corrected his mistake by releasing [the plaintiff] from TLU." Dkt. No. 1 at 8. The plaintiff says it was not a mistake but rather was punishment for having a mental health breakdown. The plaintiff may proceed on an Eighth Amendment deliberate indifference to mental health claim against defendants Wickman and Kind based on these allegations.

The plaintiff references being removed from his store/canteen job, to which he presumably returned after he moved back to the North Cell Hall. The plaintiff alleges that he has been black-listed and cannot get a job at Green Bay. Prisoners do not have a constitutionally protected interest in receiving or retaining work assignments. DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000); Wallace v. Robinson, 940 F.2d 243 (7th Cir. 1991); Zimmerman v. Tribble, 226 F.3d 568, 571 (7th Cir. 2000). The court will not allow the plaintiff to proceed on a claim based on the loss of his job or based on the inability to obtain a job at Green Bay. (The plaintiff now is confined at Fox Lake Correctional Institution.)

To summarize: the plaintiff may proceed on an Eighth Amendment deliberate indifference to mental health claim against defendants Harris-Forlles, Cummings, Kind, Schueler, Eckstein, DeGroot, Davidson, O'Donnell, Litscher, Jess, Green and John or Jane Doe BHS Psychology Director based on allegations that refused to provide him with mental health services by moving

15

him out of the dorm. The plaintiff also may proceed on an Eighth Amendment deliberate indifference to mental health claim against defendants Wickman and Kind for allegedly punishing the plaintiff for his mental breakdown by issuing him a false charge and keeping him in TLU for twelve days, after the plaintiff's suicide attempt.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Mrs. Cleary, Mark Eiting, R. Ritchie, Sharon Pierce, Sgt. Rose, John or Jane Does Psychiatrists and Captain Baumann.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Scott Eckstein, Steve Schueler, John Kind, Jon Litscher, Cathy Jess, Stephanie Cummings, Dr. Harris-Forlles, A. DeGroot, Lt. Wickman, E. Davidson, C. O'Donnell, James Greer and John or Jane Doe BHS Psychology Director. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$343.75** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

16

trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 20th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

18

Case 2:19-cv-01314-PP-WED   Filed 10/20/20   Page 18 of 18   Document 10